Antonio R. Hernández, en su carácter de Síndico del Banco Caja de Economías y Préstamos de San Germán, recurrente, *v.* El Registrador de la Propiedad de Ponce, P. R., recurrido.

Núm. 1043.—*Sometido:* Abril 12, 1939. *Resuelto:* Junio 13, 1939.

*Fernando Zapater Martínez,* abogado del recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Doña María Forés Morazo dispuso en la cláusula cuarta de su testamento, lo siguiente:

"(*b*) Lega a su sobrino José Benito Forés, mayor de edad, empleado de la Caja de Economías y Préstamos de San Germán, todo el caudal hereditario que la testadora heredó de su hermano don Santiago Forés y Morazo, según el testamento que éste otorgara por escritura número ciento diecinueve de fecha veintitrés de julio de mil novecientos veinticinco en la ciudad de Ponce ante el Notario Gustavo Rodríguez, testimonio auténtico del cual se me exhibe por la testadora en este acto y del cual ya se ha tomado razón en el Registro de la Propiedad de Ponce, Puerto Rico; verificándose este legado con la condición de que el legatario conserve los bienes y derechos de este caudal legado durante un período de veinte años a partir del fallecimiento de la testadora, sin enajenarlo, percibiendo durante todo ese período todas las rentas y producidos del mismo, o sea el usufructo para sí; y expirado dicho término, dicho caudal quedará de la propiedad de su dicho sobrino José Benito Forés, en absoluto, en pleno dominio o sea consolidándose al expirar dicho término el usufructo y la nuda propiedad."

Entre los bienes adquiridos por e inscritos a nombre de José Benito Forés, por virtud de y sujetos a dicha disposición testamentaria, figuran tres fincas urbanas ubicadas en la ciudad de Ponce.

En 9 de noviembre de 1938 el señor Forés y su esposa constituyeron hipoteca voluntaria a favor de la corporación "Banco Caja de Economías y Préstamos de San Germán," sobre las referidas tres fincas urbanas, para garantizar un préstamo por la suma de $15,000 de principal, $500 para intereses y $500 de crédito adicional. Como garantía colateral el Sr. Forés renunció y cedió a favor del banco acreedor el usufructo de las fincas hipotecadas, por un período de veinte años a partir de la fecha de la escritura. Presentada la escritura de hipoteca para su inscripción, negóse el Registrador de Ponce a practicarla, por las razones que expuso en la siguiente nota:

"*Denegada* la inscripción de la hipoteca comprendida en este documento por aparecer del Registro que el deudor hipotecante don José Benito Forés no puede libremente disponer de las fincas comprendidas en el mismo, de las cuales no tiene aún el dominio pleno porque forman parte del caudal que le fué legado por doña María Forés y Morazo en su testamento de fecha primero de octubre de mil novecientos treinta y seis con la condición de que conserve los bienes y derechos de dicho caudal, sin enajenarlos durante un período de veinte años a partir del fallecimiento de dicha testadora y que cuando expire ese período tendrá el legatario José Benito Forés la propiedad del caudal, en absoluto, en pleno dominio, percibiendo mientras tanto las rentas y productos del mismo, tomándose en su lugar anotación por ciento veinte días a favor de la corporación acreedora, donde se indica al margen de la descripción de las fincas, habiéndose consignado el defecto subsanable de no acreditar el mandatario don Jaime Juan Toro el carácter que ostenta. Las fincas reportan la hipoteca ahora inscrita, hallándose además la finca número dos sujeta a la servidumbre de arrimo y carga sobre su pared Norte indicada en su inscripción segunda."

El recurrente, síndico del banco acreedor, solicita la revocación de dicha nota y que se ordene la inscripción de la hipoteca a favor del banco.

■■ Sostiene el recurrente que la contención del registrador de que "el hipotecante no podía libremente disponer de las fincas comprendidas en la hipoteca, de las cuales no tenía aún el dominio pleno" es contraria a la ley y a la jurisprudencia; que la disposición testamentaria, supra, no prohibe al legatario *hipotecar;* que la intención y deseo de la testadora fué que el legatario conservara los bienes durante un período de 20 años, *sin enajenarlos;* que el incumplimiento de esa condición no habría de producir como consecuencia la restitución de los bienes a tercera persona; y que los derechos reales adquiridos sujetos a condición suspensiva o resolutoria pueden ser hipotecados o enajenados, quedando el adquirente sujeto a la misma eventualidad que el transmitente.

Está bien sentada como regla de hermenéutica la de que toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fué otra la voluntad del testador, debiendo atenderse más a la voluntad del otorgante que al sentido literal de las palabras que usó en el documento. Artículo 624 del Código Civil, ed. 1930; Manresa, tomo 5to., página 466.

¿Cuál es el alcance y efecto legal de la condición impuesta al legatario de conservar y usufructuar el caudal legado durante un período de veinte años, *sin enajenarlo,* para obtener el pleno dominio de dicho caudal al expirar dicho término?

Sostiene el Registrador recurrido que la prohibición de enajenar resultaría ineficaz si no llevara implícita la prohibición de hipotecar, pues aun cuando la hipoteca no es un traspaso del inmueble, autoriza su venta en pública subasta en caso de ejecución.

El artículo 139 de la Ley Hipotecaria vigente, dispone:

"Art. 139.—Sólo podrán constituir hipoteca voluntaria *los que tengan la libre disposición de sus bienes,* o en caso de no tenerla se hallen autorizados para ello con arreglo a las leyes." (Bastardillas nuestras.)

La disposición legal que acabamos de transcribir concuerda con las contenidas en los artículos 1756, 1757 y 1775 del Código Civil, ed. 1930.

¿Puede decirse que José Benito Forés, el constituyente de la hipoteca en el presente caso, tiene la libre disposición de los bienes que ha tratado de hipotecar? Para contestar esta pregunta afirmativamente tendríamos que ignorar la voluntad de la testadora, claramente expresada en la cláusula testamentaria, supra, y hacer caso omiso de las disposiciones legales que hemos citado. El efecto legal de dicha cláusula no puede ser otro que el de privar al heredero de la libre disposición del caudal hereditario, mientras no haya expirado el término de 20 años de usufructo.

La jurisprudencia hipotecaria española citada por el Registrador en apoyo de su nota es convincente. Veámosla:

"Que habiendo sido uno instituído heredero universal bajo condición de administrar por sí sus bienes, pero prohibiéndole el testador venderlos u obligarlos hasta tener cincuenta años . . . y otorgada por dicho heredero escritura de hipoteca sobre las fincas heredadas, es procedente la negativa del Registrador a inscribir dicha escritura por contener el defecto de falta de capacidad legal en el otorgante." (Resolución de 18 de noviembre de 1876.) Odriozola, Diccionario de Jurisprudencia Hipotecaria de España, Cuarta edición (año 1901); página 942, epígrafe Prohibición de enajenar (con arreglo a testamento.)

". . . no es inscribible la hipoteca constituída por el heredero que concertó con su coheredero el pacto de no enajenar la finca, así como los demás bienes adjudicados, hasta no tener pagados todos los gastos que la adquisición de derechos ocasionara." (Resolución de 11 de agosto de 1916.) Enciclopedia Jurídica Española, Apéndice 1916, página 367.

El comentarista Morell, en el tomo cuarto de su Legislación Hipotecaria, página 190, al explicar el artículo 139 de la Ley Hipotecaria, dice:

"No pueden hipotecar los que hayan recibido los bienes con alguna limitación o condición que coarte la facultad de disponer en el adquirente." (Resolución de 18 de noviembre de 1876.)

Odriozola, en su Diccionario de Jurisprudencia Hipotecaria, 4ª. edición, páginas 942 y 943, hace la siguiente relación de las resoluciones de la Dirección General de los Registros, dictadas con anterioridad al cambio de soberanía en Puerto Rico:

"Mientras conste en la inscripción de dominio practicada a favor de un heredero *la prohibición de enajenar* que le impuso su causante, no puede el Registrador, sin que quede infringido el art. 18 de la · Ley Hipotecaria, inscribir ningún contrato de enajenación otorgado por aquél. La declaración de la validez o nulidad de la prohibición absoluta de enajenar y del asiento en que se consigna, es de la competencia exclusiva de los Tribunales y no del Registrador ni de la Dirección general. . . (Resolución de 15 de junio de 1884.)

". .  .  .  .  .  .  .  .  .  .

"No es posible prescindir de las inscripciones verificadas en virtud de un testamento en las que consta que el derecho hereditario del heredero ha sido inscrito con las limitaciones impuestas por el testador, consistentes en que el padre prohibió a su hijo vender y empeñar sus bienes hasta que cumpla determinada edad, y sin hacer deslinde alguno en los derechos del heredero por el concepto de herencia forzosa y por el de herencia libre, e inscrito en esta forma el derecho del referido interesado, *claro es que la prohibición de enajenar grava sobre todas las fincas en toda su integridad;* razón por la que, al amparo del Registro y con arreglo al art. 20 de la ley, no es inscribible contrato alguno que quebrante la dicha prohibición. Esto no prejuzga las cuestiones que se plantean acerca de si esta prohibición puede o no afectar al tercio que por legítima corresponde al heredero, y si dentro de ese límite tendrá éste libertad de acción, no obstante la prohibición en que se halle el caudal, cuestiones a que sólo pueden dar solución los mismos interesados, pero que no deben ser resueltas en un recurso, que tiene como antecedente obligado el estado de derecho creado en el Registro. (Res. de 2 septiembre 1895.)" (Bastardillas nuestras.)

Siendo José Benito Forés un heredero voluntario y no forzoso, la prohibición de enajenar debe tener efecto en cuanto a todo el caudal que le fué transmitido a su muerte por la testadora.

En el caso de *Torruella* v. *El Registrador,* 13 D.P.R. 146, esta corte sostuvo que la prohibición de enajenar impuésta por el testador era absoluta y limitaba no sólo la nuda propiedad si que también el usufructo, y que el legatario no podía ceder este último a un tercero.

Hemos leído con detenimiento el alegato del recurrente. Las citas de Morell, Odriozola y Enciclopedia Jurídica Española, referentes al efecto legal de las condiciones suspensivas, rescisorias o resolutorias en las enajenaciones e hipotecas, no son de aplicación al caso ante nos. No se trata aquí de esa clase de condiciones y sí de una prohibición absoluta de enajenar, que coarta la facultad de disponer en el heredero adquirente.

Vista la prohibición de enajenar impuesta por la testadora doña María Forés y Morazo, opinamos que el registrador procedió correctamente al sostener que el heredero José Benito Forés no tiene la libre disposición de los bienes y que por lo tanto no podía hipotecarlos.

*Debe confirmarse la nota recurrida.*