CARMEN RITA BLANCH DE ANNONI, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

Núm. 1096.—*Sometido:* Noviembre 3, 1941. *Resuelto:* Enero 16, 1942.

*Enrique Báez García,* abogado de la recurrente; el registrador recurrido compareció por escrito.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El presente es un recurso gubernativo contra nota del registrador de la propiedad de Mayagüez que lee así:

"Denegada la inscripción del precedente documento con vista de un escrito y un recibo de exención de herencia, y tomada en su lugar anotación preventiva por el término legal al folio 181 vuelto del tomo 291 de Mayagüez, finca número 2357, anotación letra 'X', por observarse (1) que aun cuando el testamento ológrafo otorgado por Rafael Blanch y Camp es válido, habiendo el testador omitido la institución de herederos (artículo 693 Cod. Civil, ed. 1930) no puede presumirse que éste carece de herederos forzosos o que haya instituído a su hermana Carmen Rita Blanch de Annoni como su única y universal heredera, a quien legá todos sus bienes (art. 813 Cod. Civil, ed. 1930) no habiéndose determinado la persona o personas que componen la sucesión legítima del testador en el procedimiento correspondiente (art. 875 Cod. Civil vigente). (2) Que la legataria Carmen Rita Blanch de Annoni, no puede ocupar por su propia autoridad los bienes legádosle, de conformidad con lo dispuesto en el art. 807 del citado precepto legal; practicándose esta anotación con el defecto subsanable de no haberse consignado en los documentos que se han tenido a la vista ni acreditado en forma alguna que el testador fuera mayor de edad en la fecha en que otorgó el repetido testamento ológrafo."

El testamento a que se refiere la nota es el siguiente:

"Garage Central—Rafael Blanch—Propietario—Teléfono 257, Mayagüez, Puerto Rico—Agosto 1-40. Con esta fecha se remató las partes de las hijas de Fela del Moral, en un solar que ocupo por $600 y las partes de las hijas también de Fela, en la casa que fué de Doña Carmen por 2/6 partes por $300 adjudicando estos remate a Franco. Llavat, valor entendido pa no aparecer yo rematando estos condominio; la deuda subió con intereses y costas a $970.75 quedando a deber la Sucesión $70.75 que están anotados en la Corte de Distrito—, y pendiente de cobro—Tanto el traspaso a Llavat por mí del fallo como estos remates es simulado—Esto bien puede explicarlo el Lcdo. Enrique Báez de mi absoluta confianza—Por la presente y categóricamente, lego todos mis bienes que resulten de una liquidación de mis Líos a mi hermana Carmen Rita Blanch de Annoni con residencia en esta ciudad—Raf. Blanch.—P. D. Como abogado pa el arreglo de estos asuntos al Lcdo. Enrique Báez García, —vale—Raf. Blanch."

Encontrado el documento, se pidió por la parte interesada en tiempo y forma a la corte de distrito competente que ordenara su protocolización y seguidos los trámites que marca la ley, la protocolización fué ordenada finalmente por resolución de julio 22, 1941, cuya parte dispositiva dice:

" . . . declara justificada la identidad del testamento ológrafo anteriormente transcrito; declara también que el mismo constituye el testamento ológrafo de don Rafael Blanch y Camps; acuerda que se libre a favor de los interesados copia literal de dicho documento y del auto que en relación con el mismo hubiere recaído; ordena su protocolización en la Notaría del Lcdo. Enrique Báez García y dispone, además, que dicho documento constituya título bastante para la inscripción en el Registro de la Propiedad de los bienes inmuebles de que pueda consistir la herencia del causante en todo o en parte."

La protocolización se hizo el mismo día 22 de julio en el protocolo del notario Enrique Báez García y presentada copia en el Registro de la Propiedad de la escritura otorgada al efecto, causó la nota que transcribimos al principio de esta opinión.

A nuestro juicio esa nota debe revocarse. El propio registrador admite en ella que se trata de un testamento válido y así es en efecto.

Refiriéndose Manresa en el tomo 5 de sus Comentarios al Código Civil Español, página 273 de la quinta edición, corregida y aumentada, publicada en 1932, a las reformas introducidas por el Código en la sucesión testada, dice:

"Otra de las novedades más controvertidas por la crítica, ha sido la adopción del testamento ológrafo, admitido hoy por casi todas las legislaciones, y que ha sido principalmente combatido por la posibilidad, recientemente confirmada por los hechos, de fáciles falsificaciones o de injustas e interesadas impugnaciones."

Sin embargo el propio Manresa reconoce que el testamento ológrafo vino a satisfacer una necesidad indiscutible facilitando considerablemente la ordenación de las últimas voluntades, simplificando la testamentifacción.

Lo que la ley requiere para la validez de esta forma de testar es que el testamento esté escrito todo y firmado por el testador, con expresión del año, mes y día en que se otorgue, que se presente en la corte correspondiente y que acreditado el fallecimiento del testador se proceda a su lectura y rúbrica en audiencia pública y a la comprobación de su identidad por medio de tres testigos que conozcan la letra y firma del testador y declaren que no abrigan duda racional de hallarse escrito y firmado de mano propia del mismo. Artículos 637 al 642 del Código Civil, ed. 1930, pág. 140.

Y así consta otorgado el testamento y así se hizo en el presente caso, por virtud de lo cual la corte, de acuerdo con lo prescrito en el artículo 643 del Código Civil como fué enmendado por la ley núm. 48 de 1939, pág. 369, acordó su protocolización en determinada notaría y declaró que las copias que de la misma expidiera el notario constituirían título bastante para la inscripción de los bienes inmuebles en que consistiera la herencia.

Ahora bien, considerando el testamento en sí mismo, ¿es suficiente y permite la inscripción directa del bien inmue-

ble de que se trata—cierto condominio en un solar registrado a nombre del testador—a favor de la heredera o legataria en la totalidad de la herencia, Carmen Rita Blanch Viuda de Annoni?

Veámoslo. Como precedentes a seguir tenemos una sentencia del Tribunal Supremo de España y una decisión de esta Corte Suprema de Puerto Rico.

Por la primera, dictada en junio 8, 1918, se consideró suficiente un testamento que dice:

"Peñafiel, a 24 de octubre, 1915. Pasicos de mi vida: En esta primera carta de novios va mi testamento, todo para tí para que me quieras siempre y no dudes del cariño de tu Matilde. Rubricado."

Y por la segunda, de mayo 8, 1925, *Vázquez* v. *Vázquez*, 34 D.P.R. 241, 242, también fué considerado suficiente otro testamento redactado así:

"Rosa: por lo que pudiera ocurrir, te voy a hacer saber que yo tomé una póliza de aseguro de vida por la cantidad de cinco mil pesos a mi nombre, en la compañía Pan American Life Insurance Company de New Orleans, la cual está en mi poder sin gravamen, desde el día 6 de abril. Tiene el No. 8378. s. Esto te lo informo porque no está demás que tú lo sepas pues como tú eres la única de mis hermanas soltera que quedas, eres la única heredera, si algo me ocurriera. Esto, no lo digas: guarda estos dos pliegos en los que te hablo del asunto y murió."

Guiados por el mismo criterio liberal que informa esa jurisprudencia y a los fines de dar vida a la reforma, creemos que puede y debe concluirse que el testamento de Blanch es de igual modo suficiente.

En primer lugar, creemos que contiene lo que en él no encuentra el registrador, a saber, la institución de heredero.

Se llama testamento al acto por el cual una persona dispone para después de su muerte de todos sus bienes, o de parte de ellos, prescribe el artículo 616 del Código Civil, ed., 1930, pág. 138, y seguidamente el 617 que "el testador puede disponer de sus bienes a título de herencia o de legado" y

que "en la duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia."

Aquí las exactas palabras del testador fueron: "Por el presente y categóricamente lego todos mis bienes que resulten de una liquidación de mis Líos a mi hermana Carmen Rita Blanch de Annoni con residencia en esta ciudad."

No obstante haber usado la palabra "lego," surge clara de la totalidad de su disposición la intención del testador de instituir a su hermana heredera única de todos sus bienes, que no es legarle algo cierto y determinado.

Y en cuanto al resultado de la liquidación, ello es conforme a la realidad de los hechos y la ley en cualquier caso, porque mientras existan deudas, no hay herencia. Sentencias del Tribunal Supremo de España de 21 de junio de 1869 (20 J. C. 166) y 12 de diciembre de 1873 (28 J. C. 663).

Además, la declaración de herederos que el registrador exige no es necesaria no ya porque existe la institución de heredero en el testamento, si que por haber dispuesto el testador de todos sus bienes. Véase el número 2 del artículo 875 del Código Civil, ed. 1930, pág. 192.

No es necesario que entremos a considerar el segundo motivo de la negativa, puesto que partiendo como parte de la no existencia de la institución de heredero en el testamento, cae por su base con la sola declaración de que dicha institución existe.

Por último, para que surjan más claros los hechos del caso y a los efectos de considerar el defecto subsanable apuntado, parece conveniente transcribir los siguientes por cuantos de la resolución de la corte decretando la protocolización, a saber:

"Por Cuanto: Carmen Rita Blanch de Annoni alegó que Rafael Blanch y Camps falleció en Mayagüez, lugar de su último domicilio y sitio donde radican sus bienes, el 21 de marzo de 1941, a las ocho de la noche, siendo soltero a la fecha de su fallecimiento y no de-

jando descendientes ni ascendientes legítimos ni naturales de clase alguna.

"Por Cuanto: Continuó alegando Carmen Rita Blanch de Annoni que los padres de don Rafael Blanch y Camps fallecieron allá para el año 1888 y que los únicos parientes conocidos del indicado Rafael Blanch y Camps lo son la peticionaria Doña Carmen Rita Blanch de Annoni y Doña Asunción Blanch de Castelló."

Si los padres del testador fallecieron allá por el 1888 y si de la propia inscripción a favor del testador del condominio de que se trata resulta su mayor edad, como así es en efecto, tampoco hay base para el defecto subsanable.

No debe perderse de vista que todo cuanto hemos dicho y resuelto lo es a base de que la resolución de la corte ordenando la protocolización de un testamento ológrafo no produce el efecto de cosa juzgada, como se dijo en el citado caso de *Vázquez* v. *Vázquez*, 34 D.P.R. 241, 246, en los siguientes términos:

"Por otra parte, como la protocolización de un testamento ológrafo es más bien un acto de jurisdicción voluntaria y la resolución que ordenando la protocolización se dicte no produce el efecto de cosa juzgada, el derecho de los herederos forzosos que puedan existir o de las personas que se crean perjudicadas queda a salvo para recurrir al juicio ordinario."

*Debe revocarse la nota recurrida y ordenarse la inscripción solicitada.*

El Juez Asociado Sr. Snyder no intervino.