RAMONA COLMENERO, demandante y apelante, *v.* EPIFANIO FERNÁNDEZ VANGA, JAIME SIFRE DÁVILA y RAFAEL BALSEIRO RAMOS, demandados y apelados.

Núm. 8828.—*Sometido:* Mayo 16, 1944. *Resuelto:* Julio 10, 1944.

*Daniel Pellón la Fuente* y *Manuel García Cabrera,* abogados de la apelante; *Dubón & Ochoteco,* abogados de los apelados.

El Juez Asociado Señor de Jesús emitió la opinión del tribunal.

Aurea Balseiro Dávila falleció en esta ciudad el 26 de octubre de 1938 bajo testamento ológrafo que otorgó el 25 de junio del mismo año. A su fallecimiento no dejó herederos forzosos. Nombró albaceas a los apelados, prorrogándoles el plazo del albaceazgo a cinco años a partir de la fecha de su muerte. Constituyó un gran número de legados en dinero e inmediatamente después, en el párrafo siguiente de su testamento, instituyó por sus únicos y universales herederos a algunos de los legatarios, redactando la institución de herederos en los siguientes términos:

"En el remanente de todos mis bienes, derechos y acciones, tanto presentes como futuros, instituyo y nombro por mis únicos y universales herederos a mi hijo de crianza Rafael Vachier Sauble, a mi hermana Mercedes Balseiro Dávila, a mis sobrinos José A. Balseiro Ramos, Juan Ramón Balseiro Ramos y Rafael Balseiro Ramos y a mi hermana Ana María Balseiro Dávila, por partes iguales."

Ascendieron los legados a $1,499,000. Esa suma incluye los legados que por las cantidades que se expresan a continuación de sus nombres hiciera a las personas que instituyó por herederos: Rafael Vachier Sauble, $200,000 con carácter preferente; Mercedes Balseiro Dávila, $100,000; Ana María Balseiro Dávila, $100,000; los sobrinos de la testadora, José A. Balseiro Ramos, Juan Ramón Balseiro Ramos y Rafael Balseiro Ramos, $200,000 cada uno, totalizando los legados de los herederos la suma de $1,000,000.

Antes de vencer los cinco años a que fuera prorrogado el albaceazgo, y a pesar de no haberse liquidado todavía la herencia, la demandante exigió de los albaceas el pago de su legado en dinero montante a $40,000. Al rehusar ellos el pago, la demandante el 2 de diciembre de 1940 inició este pleito en la corte inferior solicitando sentencia que condenase a los demandados a pagarle su legado, ya en metálico ò en bienes de la herencia, con intereses legales desde la presen-

tación de la demanda, más costas, gastos y honorarios de abogados.

Para demostrar que la herencia contaba con fondos suficientes para el pago de su legado, alegó que su activo ascendía a $1,124,944.67; que las bajas sin incluir los legados sumaban $337,925.68 y que el residuo, $787,018.99, bastaba para pagar los legados, que según ella por cierta circunstancia a que luego nos referiremos, habían quedado reducidos a $568,000, y que aun después de pagados quedaría un remanente de $219,018.99 para ser distribuído entre los herederos.

Contestaron los demandados oponiéndose a las pretensiones de la demandante y, entre otros motivos para que se desestimase la demanda, alegaron que existía una inoficiosidad de dichos legados por la cantidad de $930,904.94, sin incluir en dicha suma lo que eventualmente tuviese que pagarse por concepto de contribución sobre herencia.

Fué el caso a juicio y se desestimó la demanda con imposición de costas a la demandante.

El inventario practicado por los albaceas, admitido en evidencia sin oposición de los demandados, reveló que el activo de la herencia ascendió, conforme alegó la demandante, a $1,124,944.67, y que las deudas, sin incluir los legados ni lo que el Tesorero reclama por contribución de herencia, sumaban $337,925.68.

Discutiremos ahora la reducción que hace la demandante en el montante de los legados.

Arguye ella que como los legatarios que fueron instituídos herederos aceptaron la herencia pura y simple, su calidad de herederos los hace responsables de las deudas hereditarias a la vez que su calidad de legatarios los convierte en acreedores de la herencia, y que por consiguiente los legados de los herederos, por ser éstos acreedores y deudores de la herencia a la vez, quedan extinguidos por confusión de derechos.

Generalmente el heredero voluntario que acepta la herencia pura y simple, y a la vez es legatario, corre el riesgo de

perder la herencia y el legado y aún el de responder con sus bienes propios hasta donde fuere necesario, si el caudal hereditario no cubre la totalidad de las bajas. Esto es así porque el heredero al aceptar la herencia pura y simple, como continuador de la personalidad de su causante, no sólo adquiere los derechos de éste, si que también asume sus obligaciones. A este efecto prescribe el artículo 957 del Código Civil:

"Por la aceptación pura y simple, o sin beneficio de inventario,. quedará el heredero responsable de todas las cargas de la herencia, no sólo con los bienes de ésta, sino también con los suyos propios."

Como dice Manresa, comentando el artículo 1003 del Código Civil español, idéntico al 957 del nuestro:

"Esto podría estimarse que no es justo, porque cuando nada queda al heredero, nada debe quedar a los legatarios. Pero tiene una explicación racional.

"En primer término, el heredero es libre para aceptar en la forma que quiera o para no aceptar. Si su aceptación es pura, no puede quejarse, pues que voluntariamente contrae las obligaciones que a esa forma de aceptación impone la ley." 7 Manresa, Comentarios al Código Civil, pág. 392.

Puede el heredero evitar esa situación aceptando la herencia a beneficio de inventario, y de esa forma no queda obligado a pagar las deudas y demás cargas de la herencia sino hasta donde alcancen los bienes de la misma. Artículo 977, Código Civil.

La regla general que acabamos de exponer tiene su excepción, que nace de la voluntad expresa o tácita del testador. Conforme prescribe el artículo 624 del Código Civil, en la interpretación de los testamentos debe prevalecer la voluntad del testador, y para determinarla no sólo debe atenderse al sentido literal de sus palabras, sino a lo que resulte del contexto del testamento. Examinémoslo, pues, para determinar si de acuerdo con la voluntad de la testadora el aceptar

los herederos la herencia pura y simple les hace responsables con sus propios legados del pago de los demás legados.([1])

Al constituir los legados, se expresa la testadora en los siguientes términos:

"(1) Lego a mi hijo de crianza Rafael Vachier Sauble la suma de doscientos mil dólares, *con carácter de legado preferente.* (2) Lego a mi hermana Mercedes Balseiro Dávila la suma de cien mil dólares. (3) Lego a mi hermana Ana María Balseiro Dávila la suma de cien mil dólares, siendo mi voluntad expresa en cuanto a este legado que mi hermana Ana María sólo podrá disponer durante su vida de la renta y usufructo de la expresada cantidad y que al ocurrir su fallecimiento dichos cien mil dólares pasen íntegros en pleno dominio a mis herederas que más adelante designo, por partes iguales. (4) Lego a mis sobrinos José A. Balseiro Ramos, Juan Ramón Balseiro Ramos y Rafael Balseiro Ramos la suma de doscientos mil dólares para cada uno. [Siguen otros legados.]" (Subrayado nuestro.)

Estos legatarios son los parientes más próximos de la testadora: su hijo de crianza, sus hermanas y sus sobrinos. Son ellos los herederos instituídos en la cláusula que sigue inmediatamente después de la que se refiere a los legados, la cual empieza con las palabras: "En el remanente de todos mis bienes, derechos y acciones."

No pudo ser la voluntad de la testadora que los derechos de estos herederos, sus más próximos parientes, entre los cuales se halla su hijo de crianza,([2]) queden supeditados a los de los demás legatarios que no están unidos a la testadora por vínculos tan fuertes.

---

([1])Es bueno tener presente que si bien el legatario es un acreedor de la herencia, su crédito es una deuda voluntaria que asume el acreedor por mera gratuidad y que por consiguiente, al obligarse a su pago puede hacerlo con las condiciones que estime conveniente imponer.

([2])La testadora no sólo declara preferente el legado de su hijo de crianza, si que expresa en el mismo testamento su acendrado cariño y gran preocupación por el porvenir de él cuando dice:

"Suplico encarecidamente a todos mis herederos y legatarios . . . muy especialmente que atiendan y ayuden en todas las medidas de sus fuerzas a mi hijo de crianza Rafael Vachier Sauble y a éste le recomiendo y pido la mayor obediencia y respeto a sus tías, tíos y tutores."

Considerado el contexto del testamento a la luz de éstos hechos, somos de opinión que cuando la testadora instituyó a estos herederos en el remanente de todos sus bienes, derechos y acciones, fué su voluntad que sus derechos hereditarios fuesen los que pudieren existir luego de satisfacerse todos los legados. Véase por analogía la sentencia del Tribunal Supremo de España de 19 de diciembre de 1924 (164 J. C. 748), citada en el alegato de los apelados, la cual se halla transcrita en la Enciclopedia Jurídica Española en su apéndice del año 1925, tomo, segundo, página 706.

Revelando el inventario que el activo de la herencia ascendió a $1,124,944.67, las deudas a $337,925.68, y los legados a $1,499,000, fácil es concluir que, independientemente de lo que en todo caso habrá de pagarse por concepto de contribución sobre herencia, existe la inoficiosidad de legados que alega la parte demandada, y no pudiéndose pagar en su totalidad el legado de la demandante hasta que no se liquide la herencia, y no pudiéndose ésta liquidar mientras no se resuelva en definitiva el litigio que relacionado con la misma está pendiente ante el Tribunal de Contribuciones de Puerto Rico, somos de opinión que la corte sentenciadora actuó con arreglo a derecho al desestimar la demanda.

*Procede la confirmación de la sentencia.*