ELENA LUISA, ALICE MARY, NORMA IRIS y ROBERTO LUIS JUNGHANNS RIVERA, demandantes y apelados, *v.* CORNELL UNIVERSITY, DR. L. H. JUNGHANNS, DR. F. W. F. WEIBER, DR. ADOLPH WEIBER, LCDO. ALFREDO JIMÉNEZ MORENO, FRANTEIN ISABELLA JUNGHANNS y JOHN DOE y RICHARD ROE, demandados y apelante la primera.

Núm. 9862.—*Sometido:* Marzo 1, 1949. *Resuelto:* Junio 23, 1950.

674

*James R. Beverley* y *R. Castro Fernández*, abogados de la apelante; *Félix Ochoteco, Jr.*, y *Luis E. Dubón*, abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Robert L. Junghanns nació en el estado de Nueva York el día primero de julio de 1875. Cursó sus estudios universitarios en la Universidad de Cornell donde se recibió en el año 1897 de bachiller, y en el año 1898 de Maestro en la Ciencia de la Agricultura, trasladándose posteriormente a Puerto Rico a vivir en el pueblo de Bayamón donde residió

hasta el 21 de septiembre de 1947 en que falleció en estado de soltería, sin dejar ascendientes.

El 19 de junio de 1902 Junghanns otorgó, en el idioma, inglés, el siguiente testamento ológrafo: (¹)

"The last will & Testament of Robb. L. Junghanns formerly of Poughkeepsie, N. Y. now of Bayamón, P. R.

"As all my personal as well as real property originally came from sums given to me by my dear father Dr. L. H. Junghanns formerly of Poukeepsie, (sic) N. Y., now staying with me at Bayamón, it is my wish that all my personal as well as real property should become his absolute property, as universal heir, to be disposed of by him, as may seem most fit to him.

"In case that he should die without making other disposition of my property, I desire that all personal as well as real property belonging to me or the proceeds thereof, shall go to Cornell University of Ithaca, N. Y., U. S. A. for the purpose of strengthening their library of Anthropological & Entomological Works;

(¹) Si bien el artículo 633 del Código Civil, ed. 1930, dispone: "Para testar en un idioma distinto del castellano o del inglés, se requiere la presencia de dos intérpretes elegidos por el testador que traduzcan su disposición al castellano o al inglés. El testamento se deberá escribir en las dos lenguas, o sea en la del testador y en inglés o castellano. Lo mismo se hará cuando el testamento en inglés deba surtir sus efectos en todo o en parte en Puerto Rico, y en el caso de que el testamento en castellano deba surtir sus efectos en todo o en parte en los Estados Unidos", el mismo no se aplica al otorgamiento de los testamentos cerrados u ológrafos. 5 Manresa, Comentarios al Código Civil Español, 5ta. ed., pág. 453 et seq. He aquí, no obstante su traducción:

"La última voluntad y testamento de Robb. L. Junghanns, anteriormente de Poughkeepsie, N.Y., ahora de Bayamón, Puerto Rico.

"Como todos mis bienes muebles así como los inmuebles originalmente fueron adquiridos con dinero donado a mí por mi querido padre, Dr. L. H. Junghanns, anteriormente de Poukeepsie (sic), N. Y., y quien vive ahora conmigo en Bayamón, es mi deseo que todos mis bienes muebles así como los inmuebles pasen a ser de su exclusiva propiedad, como heredero universal, para que de ellos disponga como mejor le plazca.

"En caso de que él muera sin que disponga de mi propiedad en alguna otra forma, es mi voluntad que todos los bienes muebles así como los inmuebles que me pertenezcan, o el importe de los mismos, vayan a la Universidad de Cornell, de Ithaca, N.Y., E.U. de A., con el fin de enriquecer su biblioteca con obras sobre Antropología y Entomología (alternativamente), a opción de los Síndicos de la U. de C.

"Bayamón, P. R. (firmado) Robb. L. Junghanns. 19 de junio de 1902."

or the income to be devoted toward collecting or research work in Anthropology or Entomology (alternately) at the option of the Trustees of C. U.

"Bayamón, P. R. (signed) Robb. L. Junghanns. June 19, 1902."

El 20 de agosto de 1907 otorgó, también en el idioma inglés, el siguiente testamento cerrado: (²)

"I, the undersigned, Robert Ludwig Junghanns, a citizen of the United States of America, and at present domiciled at the City of Bayamón, in the Island of Puerto Rico, son of Ludwig

---

(²) He aquí su traducción:

"Yo, el suscribiente, Robert Ludwig Junghanns, ciudadano de los Estados Unidos de América, y al presente domiciliado en la ciudad de Bayamón, Isla de Puerto Rico, hijo de Ludwig Robert Junghanns y Ohamy Ha Hari, fallecidos ambos, por la presente declaro y hago público lo siguiente como mi última VOLUNTAD Y TESTAMENTO:

1. Dono, cedo y lego todos mis bienes, inmuebles, muebles o mixtos en ley o equidad, doquiera estén situados, que a mi muerte me pertenezcan o posea o que se me adeuden, reciba o me pertenezcan, a la Universidad de Cornell de Ithaca, N.Y., para que ésta haga uso de los mismos para sí y sus cesionarios para siempre, el interés o el capital a emplearse en una o más de las siguientes maneras, según parezca mejor a los Síndicos de la Universidad de Cornell:

(a) Para el establecimiento de una cadena de agricultura tropical.

(b) Para la compra de ejemplares, libros y folletos sobre entomología; equipar expediciones entomológicas y la conservación y mantenimiento de colecciones entomológicas.

(c) Compra de libros sobre agricultura, especialmente aquéllos sobre agricultura tropical e historia de la agricultura.

(d) El legado anterior está sujeto, sin embargo, a las condiciones siguientes:

(a) La suma de $1,600 deberá pagarse al Dr. F. W. F. Weiber, en dinero americano que se le adeuda.

(b) La suma de $750 deberá pagarse al Dr. Adolph Weiber, de Brooklyn, N.Y., para sufragar sus gastos como albacea.

(c) La suma de $500 deberá pagarse a Alfredo Giménez y Moreno, de Bayamón, Porto Rico, para sufragar sus gastos como albacea.

(d) La suma de $250 deberá pagarse anualmente· durante su vida a Frantein Isabella Junghanns de Freiburg, in/3, Baden, Alemania.

(firmado) Robt. L. Junghanns

2. Nombro al Dr. Adolph Weiber de Brooklyn, N.Y., y al Lcdo. Alfredo Giménez y Moreno de Bayamón, Porto Rico, albaceas de ésta mi última voluntad y testamento.

En testimonio de lo cual, he firmado mi nombre en la ciudad de Bayamón, P. R., el día 20 de agosto de 1907.

(firmado) Robt. L. Junghanns."

Robert Junghanns and Ohamy Ha Hari, both now deceased, do hereby make, declare and publish the following to be my last WILL & TESTAMENT:

1. I give, devise and bequeath all my estate, real, personal or mixed in law or equity, wheresoever it may be situated that I die, seized or possessed of or which is owing, coming or belonging to me, to The Cornell University of Ithaca, N. Y.: *To have and to hold,* unto it and its assign forever, the interest or capital to be used in either or all of the following ways as the trustees of 'The Cornell University' may see fit:

(*a*) To go towards the establishment of a Chain of Tropical Agriculture.

(*b*) For the purchase of Entomological Specimens books, pamphlets, etc.; the fitting out of Entomological Expeditions & the conservation & maintenance of the Entomological Collections.

(*c*) Purchase of Agricultural books especially those bearing on tropical Agriculture and the History of Agriculture.

(*d*) The above bequeath (*sic*) is however subject to the following conditions:

(*a*) The sum of $1,600 is to be paid to Dr. F.W.F. Weiber, U.S.A., money that is due him.

(*b*) The sum of $750 is to be paid to Dr. Adolph Weiber of Brooklyn, N.Y. to defray expenses as executor.

(*c*) The sum of $500 is to be paid to Alfredo Giménez y Moreno of Bayamón, Porto Rico to defray expenses as executor.

(*d*) The sum of $250 is to be paid annually during life to Frantein Isabella Junghanns of Freiburg, in/3, Baden, Germany.

(signed) Robt. L. Junghanns.

2. I appoint Dr. Adolph Weiber of Brooklyn, N. Y. and Sr. Dn. Lcdo. Alfredo Giménez y Moreno of Bayamón, Porto Rico executors of this my last will & testament.

*In Witness whereof,* I have hereunto signed my name at the city of Bayamón, P. R. this 20th. day of August 1907.

(signed) Robt. L. Junghanns."

Junghanns dejó a su fallecimiento, como únicos descendientes, cuatro hijos naturales reconocidos habidos en relaciones amorosas con Juana Rivera, quien falleció antes que él, nacidos todos en Bayamón en las siguientes fechas: Elena Luisa, el 23 de junio de 1918; Roberto Luis, el 30 de sep-

tiembre de 1922; Alice Mary, el 3 de marzo de 1926 y Norma Iris, el 22 de marzo de 1931.

Junghanns también dejó a su muerte bienes muebles e inmuebles, situados en Bayamón, encontrándose entre los primeros varias colecciones arqueológicas, libros y pinturas.

El 23 de octubre de 1947 la Corte de Distrito de Bayamón ordenó la protocolización de los testamentos ológrafo y cerrado antes transcritos, la que tuvo lugar el 30 de octubre de 1947 por la escritura núm. 29 de ese año ante el notario Félix Ochoteco, Jr.

Los hijos naturales de Junghanns, arriba mencionados, iniciaron la presente acción contra la Universidad de Cornell y todas las personas que podrían resultar beneficiadas por virtud de las disposiciones testamentarias de su padre, a los fines de que se declararan nulos por razón de preterición ambos testamentos, solicitando a la vez se les declarara únicos y universales herederos de su padre; que se declarara extinguida, por pago, la deuda que por $1,600 reconocía Junghanns en su testamento cerrado a favor del Dr. F. W. F. Weiber, y extinguida también la pensión anual de $250 dispuesta en el mismo testamento a favor de Frantein Isabella Junghanns.

Emplazados en debida forma todos los demandados, sólo compareció la Universidad de Cornell, habiéndose anotado la rebeldía a los demás. El caso fué sometido a consideración del tribunal inferior a base de una estipulación de hechos. Dictada sentencia declarando nulos, por preterición de herederos forzosos, los dos testamentos de referencia, y únicos y universales herederos de Robert L. Junghanns a sus hijos naturales reconocidos ya mencionados, así como extinguida totalmente por pago la deuda de $1,600 reconocida por el causante a favor del Dr. Weiber en su testamento cerrado, apeló la demandada Universidad de Cornell, señalando como errores (1) el haber la corte inferior declarado totalmente nulo el testamento cerrado otorgado el 20 de agosto de 1907 y (2) el no declarar que por dicho testamento cerrado Junghanns cons-

tituyó un fideicomiso traspasando a la Universidad de Cornell todos sus bienes muebles para beneficio de dicha Universidad y de las otras personas mencionadas en dicho testamento.

Argumentando su primer señalamiento de error sostiene la apelante que la intención del testador fué dejarle todos sus bienes a título de legado. Partiendo de tal premisa arguye que el testamento no es nulo en su totalidad, pues vale el legado hecho a su favor en aquella porción de la herencia que no sea inoficiosa, conforme al artículo 742 del Código Civil, ed. 1930,(³) ya que la preterición de los herederos forzosos—aquí hijos naturales reconocidos—anularía únicamente una institución de heredero a su favor, si tal fuera el caso, pero que habiendo sido instituída legataria, y no heredera, el legado surte efecto en tanto no sea inoficioso, esto es, en cuanto a la mitad de la herencia.(⁴) Examinemos los fundamentos que aduce para la premisa arriba apuntada.

El primero consiste en que cuando Junghanns instituyó heredero a su padre por virtud del testamento ológrafo otorgado el 19 de junio de 1902, consignó: ". . . it is my wish that all my personal as well as real property should become his absolute property, *as universal heir*, to be disposed of by him as may seem most fit to him" (bastardillas nuestras), significando así expresamente su voluntad de instituirlo *heredero*, mientras que en el testamento cerrado otorgado el 20 de agosto de 1907 no sólo no empleó dicho término—cono-

---

(³) Dicho artículo dispone: "La preterición de alguno o de todos los herederos forzosos en línea recta, sea que vivan al otorgarse el testamento o sea que nazcan después de muerto el testador, anulará la institución del heredero; pero valdrán las mandas y mejoras cuando no sean inoficiosas.

"La preterición del viudo o viuda no anula la institución; pero el preterido conservará los derechos que le concede el presente código.

"Si los herederos forzosos preteridos mueren antes que el testador, la institución surtiría efecto."

(⁴) El artículo 769 del Código Civil, ed. 1930, enmendado por la Ley núm. 13 de 29 de marzo de 1945 (pág. 39), en vigor a la fecha del fallecimiento del testador, disponía: "Cuando el testador no dejare descendientes ni ascendientes legítimos, los hijos naturales reconocidos tendrán derecho a la mitad de la herencia."

ciendo su alcance y pudiendo hacerlo si ésa era su voluntad—sino que utilizó, para disponer de sus bienes en beneficio de la apelante, las palabras "devise" y "bequeath", que según el derecho común y estatutario americano se usan, la primera, para significar un *legado* de bienes inmuebles, y la segunda, un *legado* de bienes muebles.

El uso del término *heredero universal* en el testamento de 1902, y su ausencia en el de 1907, no tiene el alcance que le atribuye la apelante, ni, como veremos más adelante, es circunstancia a considerarse para determinar el concepto en que en derecho debe tenerse la disposición hecha de sus bienes por el testador en este último, pues es el propio testamento de 1907 el cual debemos examinar para hacer tal determinación. Pero si fuéramos a considerar el anterior testamento para hacerla, entonces la conclusión sería adversa a la apelante. Si bien en el testamento de 1902 se usó el término "as universal heir" al hacer el testador la disposición de sus bienes a favor de su padre, no se usó en el último párrafo del mismo, cuando dispuso:

"In case that he should die without making other disposition of my property, I desire that all personal as well as real property belonging to me or the proceeds thereof, shall go to Cornell University of Ithaca, N.Y., U.S.A. for the purpose of strengthening their library of Anthropological & Entomological Works; or the income to be devoted toward collecting or research work in Anthropology or Entomology (alternately) at the option of the Trustees of C. U."

Esta disposición establece claramente una sustitución simple *de heredero* a favor de la Universidad de Cornell. Artículo 703, Código Civil, ed. 1930. Si fuéramos a juzgar, pues, la voluntad de Junghanns en el testamento de 1907 por la expresada en el testamento de 1902, sería inevitable la conclusión de que en el de 1907, al dejarle todos sus bienes a la apelante, lo hizo a título de heredera universal, ratificando así su previa voluntad consignada en el de 1902.

■■ Dicho lo anterior, pasemos a considerar otro de los fundamentos que aduce. ¿Tienen las palabras "devise" y "bequeath", usadas en el testamento de 1907, el efecto que a ellas les atribuye la apelante, de constituirla en legataria de todos los bienes de Junghanns? Veamos.

En el testamento de 1907, arriba transcrito, luego de hacer constar Junghanns que tanto su padre Ludwig Robert Junghanns como su madre Ohamy Ha Hari habían fallecido, procedió a disponer de *todos* sus bienes en la siguiente forma:

"1. I give, devise and bequeath all my estate, real, personal or mixed in law or equity, wheresoever it may be situated that I die, seized or possessed of or which is owing, coming or belonging to me, to the Cornell University of Ithaca, N.Y.: *To have and to hold,* unto it and its assigns forever, the interest or capital to be used in either or all of the following ways as the trustees of 'The Cornell University' may see fit:"

Seguidamente, bajo las letras (*a*), (*b*) y (*c*) de esa misma cláusula expresó la aplicación que la Universidad de Cornell debería dar a lo por él dejádole. Véase artículo 726 del Código Civil, ed. 1930. E inmediatamente consignó: "The above bequeath (sic) is however subject to the following conditions", exponiendo entonces entre sus llamadas condiciones las siguientes: el pago de la suma de $1,600 al Dr. F. W. F. Weiber, por dinero adeudado a éste; el pago de las sumas de $750 y $500, respectivamente, al Dr. Adolph Weiber de Brooklyn y Alfredo Jiménez y Moreno de Bayamón para cubrir gastos como albaceas; y el pago de la suma de $250 a, y durante la vida de Frantein Isabella Junghanns.

Es de notarse que Junghanns, al hacer su disposición en favor de la apelante, lo hizo de *todos* sus bienes, muebles e inmuebles, incluyendo los que denominó *mixtos en ley o equidad,* de suerte que la totalidad de dichos bienes pasara a ser propiedad de la apelante. Es por haber usado el testador las palabras "devise" y "bequeath" en la forma ya dicha, que la apelante sostiene que la disposición de los bienes a su favor fué a título de legado y no a título de herencia.

El artículo 624 del Código Civil, ed. 1930, dispone que "Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fué otra la voluntad del testador" y que "En caso de duda, se observará lo que parezca más conforme a la intención del testador según el tenor del mismo testamento." El artículo 617 a su vez provee que "El testador puede disponer de sus bienes a título de herencia o de legado" y que "En la duda, aunque el testador no haya usado materialmente la palabra *heredero*, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia." (Bastardillas nuestras.)

El alcance del testamento de 1907 no puede ser medido por el significado que las palabras "devise" y "bequeath" tengan en el derecho común y estatutario americano. De acuerdo con nuestro derecho, el concepto que en el orden jurídico deban merecer los herederos y legatarios estriba en si reciben a título *univeral* o a título *particular*—artículo 609, Código Civil, ed. 1930—pudiendo instituirse un legado de bienes muebles o de bienes inmuebles, siempre que esté presente la *particularidad* en la disposición. 5 Manresa, Comentarios al Código Civil (5ta. ed.) 311, 312. Por otro lado, si un *heredero* es instituído en cosa cierta y determinada, será considerado como *legatario*—artículo 697 del Código Civil—no obstante la denominación empleada; mientras que una persona a quien se deja un *legado*, será considerada como heredera y no como *legataria*, si está presente la *universalidad* en la disposición, *Blanch* v. *Registrador*, 59 D.P.R. 730, pues debe atenderse más a la voluntad del testador que al sentido literal de las palabras que usó en el testamento. *Hernández, Síndico* v. *Registrador*, 55 D.P.R. 119; *Colmenero* v. *Fernández*, 63 D.P.R. 919. Véase también *Serrano* v. *Roca Vda. de Coy*, 43 D.P.R. 670.

No podemos atenernos, pues, al significado que generalmente tienen las palabras "devise" y "bequeath" en el dere-

cho americano(⁵) cuando, según nuestro derecho la médula del concepto es el carácter con que se dispone de los bienes, si a título *universal* o a título *particular*. Sobre este extremo, así se expresa Manresa, ob. y tomo citados, pág. 316:

"En efecto, la palabra título universal no quiere decir que el título abarque o comprenda la totalidad, o el conjunto, o la suma de todos los bienes que comprende la sucesión, ni aun siquiera el remanente de éstos, o sea la herencia en el sentido limitado que a la misma daba la legislación de Partidas, sino que *el derecho transmitido al instituído se contraiga o haga relación a esa universalidad que constituye el caudal hereditario, y no a lo individual y concreto, o sea a determinados bienes considerados en particular y con abstracción de la universalidad o caudal hereditario.*" (Bastardillas nuestras.)

No obstante el uso de las palabras "devise" y "bequeath", surge con claridad del testamento de 1907 que la intención del testador fué transmitir a la apelante la universalidad que constituía su caudal hereditario, y no algo individual y determinado, considerado en particular y con abstracción de dicha

---

(⁵) Aun en la jurisprudencia americana, a las palabras "bequeath" y "devise" se les ha dado, en la interpretación de disposiciones testamentarias, alcances distintos de los que generalmente, en su acepción legal, conllevan, cuando la voluntad del testador surge clara del contexto de la disposición. Así, la palabra "bequeath" se ha considerado sinónima de "devise" cuando se ha usado con relación a bienes inmuebles. Thompson *on Wills*, 2da. ed. pág. 569, sec. 480; *Burwell* v. *Cawood et al.*, 43 U.S. 559, 11 L. ed. 378; *In re Hoover's Estate*, 7 N.Y.S. 283. Véanse también *Rickman* v. *Meier*, 213 Ill. 507, 72 N.E. 1121; *Shumate* v. *Bailey et al.*, 110 Mo. 411, 20 S.W. 178 y *Schwingel* v. *Anthes*, 72 Neb. 643, 101 N.W. 335. Esto es así porque al igual que en el derecho civil, en el común y estatutario americano "La regla cardinal en la interpretación de testamentos es que las palabras se interpretarán subordinándose a la intención del testador, y no controlarán dicha intención, cuando ésta es clara y determinada." *Burwell* v. *Cawood*, supra. Véase 57 Am. Jur., *Wills*, sec. 1400, pág. 934. Nótese que en el testamento de 1907 Junghanns, no obstante usar las palabras "devise" y "bequeath" después de "give", trasmitió a la Universidad de Cornell "all my *estate*, real, personal or mixed in law or equity." (Bastardillas nuestras.) Tal lenguaje ha sido interpretado consistentemente por los tribunales americanos como una disposición total de bienes, de todas clases, teniendo la palabra "estate" una significación mas lata que "property". *Archer* v. *Deneale*, 26 U.S. 585, 7 L. ed. 272; *Hatch* v. *Ferguson* (C.C.A. 9, 1895) 68 Fed. 43, 57 Am. Jur., *Wills*, sec. 1337, pág. 886.

universalidad, sujeta a ciertas *condiciones*. El hecho de que Junghanns, al consignar éstas, comenzara con la frase "The above bequeath (sic) ..." no da a la disposición que de todos sus bienes hizo a favor de la Universidad de Cornell, carácter de *legado*, pues dicha frase no es lo determinante del concepto en que ha de tenerse aquélla, ya que no se usó con la intención de describir la naturaleza del acto testamentario por el que transmitía la totalidad de sus bienes—muebles e inmuebles— y mucho menos para limitarlo tan sólo a bienes muebles, y sí únicamente como frase introductoria a las disposiciones subsidiarias que habrían de gravar *todos* los bienes transmitidos.

El otro de los fundamentos que aduce la apelante en apoyo de su contención de que fué instituída *legataria* y no *heredera*, lo basa en que, por un razonamiento de lógica, (°) no pudo ser la intención de Junghanns que su personalidad continuara en una *persona jurídica* como la Universidad de Cornell. Basta decir a este respecto que, en nuestro derecho —artículos 675 y 676 del Código Civil—una entidad jurídica que tenga existencia legal está capacitada para suceder por testamento o ab intestato, y que no imponiendo la ley limitación alguna a tal capacidad, la tiene, al suceder por testamento, para hacerlo a título universal o a título particular, según resulte de la disposición que a su favor se haga.

Por último, la apelante sostiene que si Junghanns no la instituyó legataria en *la totalidad* de sus bienes, sí lo hizo,

---

(°) En estas palabras expone la apelante su razonamiento, páginas 10 y 11 de su alegato: "Repugna a la lógica que una persona natural tenga la intención de dejar a una PERSONA JURÍDICA continuadora de su personalidad. Lógico es que una persona natural desee que su personalidad continúe, después de su muerte, en otra persona natural, razón por la cual si dicha persona deja todo lo que tiene a otra persona natural, se presuma que la instituye su única heredera. Sin embargo, si esa persona natural deja todos sus bienes a una PERSONA JURÍDICA, la presunción debe ser todo lo contrario, y si esa persona, como el testador en este caso, conoce el valor literal de las palabras de su idioma; las sabe usar para expresar su deseo y voluntad; expresamente omite la frase con que se dispone a título de herencia y usa otras que evidencian su deseo de legar, toda duda necesariamente tiene que disiparse, para quedar elocuentemente expresada su última voluntad."

por lo menos, en cuanto a sus bienes *muebles;* y que siendo así, dicho legado es válido hasta donde no resulte inoficioso. Se funda en la frase introductoria, ya antes examinada, usada en el testamento al consignarse las *condiciones* establecidas por Junghanns, de "The above bequeath (sic). . ." Creemos innecesario, por lo dicho anteriormente, dar atención *in extenso* a este argumento. La disposición hecha por el testador lo fué de *la totalidad* de sus bienes, a título universal, sin que separara los *muebles* para disponer de ellos en otra forma. Por el contrario, los incluyó específicamente como parte de su patrimonio (*estate*) que transmitía a la apelante. Dicha frase no tiene el efecto de constituir los bienes muebles en *legado* de parte alícuota de la herencia.

La apelante pone énfasis en la sentencia del Tribunal Supremo de España de 11 de febrero de 1903, 95 Jurisprudencia Civil 278, que declara que el *legado del tercio de la herencia* es un legado de parte alícuota de la misma, que no está prohibido en el Código Civil, *ni constituye título universal* para la sucesión.(⁷)  Pero ya hemos visto que en el caso de autos Junghanns no dejó a la apelante parte alícuota o porción alguna de sus bienes, sino *todos,* sujetos a las cargas o condiciones consignadas.

---

(⁷) El siguiente es el comentario de Manresa, tomo 5, ob. citada, pág. 315, sobre esta sentencia:

"La sentencia del Tribunal Supremo de 11 de Febrero de 1903, declara que el *legado* del tercio es un legado de parte alícuota de la herencia, que ni se prohibe en el Código Civil, ni constituye título universal para la sucesión.

"Con esta resolución queda admitida en nuestro derecho la existencia del legado de parte alícuota, a pesar de no estar reglamentado en el Código y de que, interpretando a *contrario sensu* el artículo 768, [697 del nuestro] podría inferirse que el lagatario de parte alícuota debe ser considerado, no como tal legatario, sino como heredero.".

Véase la sentencia de 2 de enero de 1920, 149 Jurisprudencia Civil 11, y el significado de "indeterminado, proporcional y aún aritmético" que le atribuye dicho comentarista al concepto de *alícuota,* pág. 316, ob. y tomo citados, características éstas que no aparecen del testamento de Junghanns con relación a ninguna porción de sus bienes.

Véase también 5 Valverde, Tratado de Derecho Civil, nota a las págs. 168 y 169, último párrafo.

La conclusión a que hemos llegado con relación al primer señalamiento de error, dispone del segundo, por el que sostiene la apelante que por su citado testamento Junghanns constituyó un fideicomiso traspasando a la Universidad de Cornell todos sus bienes *muebles* para beneficio de dicha Universidad y de las otras personas mencionadas en dicho testamento.

██ Resuelto, pues, que Junghanns instituyó heredera universal, y no legataria, a la apelante, tal institución, por disposición del artículo 742 de nuestro Código Civil, (8) es nula por preterición de herederos forzosos—sus hijos naturales reconocidos—quienes, abierta la sucesión intestada por tal motivo, y no habiendo dejado su padre descendientes ni ascendentes legítimos o legitimados, le suceden en el todo de la herencia—artículo 902 del Código Civil—sujeta ésta, desde luego, a las cargas o legados que puedan subsistir a la fecha de su muerte. (9)

*Procede la confirmación de la sentencia.*

---

(8) *Iturrino* v. *Iturrino,* 24 D.P.R. 467; *Ex parte Boerman* v. *Marrero,* 34 D.P.R. 126; *Garrastazú, Sucn.* v. *Registrador,* 36 D.P.R. 177; *Semidey* v. *Viqueira,* 53 D.P.R. 467; 6 Manresa, ob. citada, tomo ·5, págs. 347, 348 y 352.

(9) El párrafo 8 de la estipulación de hechos por la cual fué sometido el caso a la corte inferior es al efecto de que: "En la fecha en que falleció Mr. Robert L. Junghanns, éste no adeudaba suma alguna al Dr. F. W. F. Weiber, y habían fallecido los Sres. Dr. Adolph Weiber, Lcdo. Alfredo Jiménez Moreno y la Sra Frantein Isabella Junghanns."