HELEN SCHWINGEL ET AL., APPELLANTS, V. JOHN HENRY
ANTHES ET AL., APPELLEES.*

FILED NOVEMBER 16, 1904.   No. 13,378.

Trusts: PRESUMPTION.   One who acquires a trust estate with knowledge
    of its character, and while occupying confidential relations toward
    it and the *cestuis que trustent*, will be presumed to have taken
    the title subject to the trust, and that presumption cannot be
    rebutted without evidence, nor by such as is vague and am-
    biguous.

APPEAL from the district court for Clay county: GEORGE
W. STUBBS, JUDGE.   *Judgment of affirmance vacated.
Judgment of district court reversed.*

*H. C. Palmer, John C. Stevens* and *John J. Sullivan,*
for appellants.

*S. W. Christy, J. L. Epperson & Sons* and *Thomas H.
Matters, contra.*

AMES, C.

This is a rehearing from a former decision published
unofficially in 5 Neb. (Unof.) 345.   The case, as it is now
regarded, presents some aspects not adverted to on the
former argument, and the statement of facts already made
needs to be somewhat supplemented.   The will, which,
together with the deed by the testator to his wife, con-
stitutes the common source of title of the parties to this
action, appears to have been drawn by the testator's own
hand.   It is apparent from a moment's inspection of it
that he was not only not familiar with legal forms or
phraseology, but that, being of foreign nativity, he was
unable to express himself accurately in the English lan-
guage, upon ordinary subjects of conversation.   The fol-
lowing is, as far as possible, a literal copy of the instru-
ment.

* Rehearing denied.   See opinion, p. 649, *post.*

"This 6 day of Stp. 1886. To hwom it may consern.

"This is my Last Will Testament of Jacob W. Anthes of the county of Clay stat of Neb

"Mindfoll of the uncertainties of human life do make buplish and declare this My last will and testoment in the manner following first after the paiment of my just depts and funeral expenses I give devise and bequeath to My two sons Henery Anthes and W. C. Anthes each $500, five Hundred Dollars To My doughters Helen Schwingel Elisbet Schwab and Katarin Briedenbah shall have Equally withe to the rememder of all my Estates both Real and personal whict the two sons Henery Anthes and W. C. Anthes schare and schare alike

"The said Helen Schwingel received the sum of $250 will I was living whearth shall be deducked from widoud interest (2) Second id is My will tat My wife Elisabeth Anthes schal have all the real and personel estates fore her own jues wile schea is living after her dead id schall be and becom as discriebt in this will abouvf

"I hereby nominad and appoint my wife Ealisabet Anthes the executor of this my last will and testament and herepy authorise empower her the said Elisabet Anthes to compound compromise and settle any claim or demand which may be against or in favor of my said estate in witness whereof I have hereunto set my hand and seal this 6 day of Sep 1886

"Signed pupblished and declared by the said Jacob W. Anthes to be his last will and testament is presence of us who have signed our names ad his request as witnesses is his presence an in the presence of eacd other.

"Jacob W. Anthes."

For the right disposition of this suit much depends, in my opinion, upon the true construction of the will, a subject which seems to have been, hitherto, somewhat neglected.

For an interpretation of this instrument it is unnecessary to repeat the settled rule of this court that the object to be kept principally and constantly in view is to ascer-

tain the intent of the testator, and, in so far as it is consistent with general rules of law, to carry it into effect. A circumstance throwing light upon this question is the fact that he had no personal property of considerable value, and that he was indebted to a relatively large amount in addition to the sum of $3,500, for which all his real estate was incumbered by mortgage. It is clear, therefore, that he anticipated that some, if not all, of his lands, would be required to be sold for the payment of his unsecured obligations, and, whether wittingly or not, he employed language apt for the purpose of charging them as liens thereon. 2 Jarman, Wills (6th ed.), *1390 *et seq.* This fact, perhaps, explains why his benefactions to his sons and daughters took the form of legacies rather than of devises, and that the only specific devise he made was that of a life estate to his wife, leaving to his heirs a reversion rather than a remainder or remainders. The writer is prevailed upon to think that he intended so to do, both by the circumstances just mentioned and by the fact that the legacy to one of his daughters is but half that to each of her sisters, because of the fact, mentioned in the will, that she had already received $250, which was to be deducted from the sum bequeathed to her. First, the two sons were to have legacies of $500 each; then, the remainder (residue) of the estate was to be divided between the sons and daughters equally, deducting $250 from the share of Helen. Manifestly, this scheme could not have been carried out, and, in his circumstances, the testator could not have anticipated that it could be so, without the sale of the estate. This situation was without doubt sufficient to charge the first two legacies as liens upon the land, and I think the others also. 2 Jarman, Wills (6th ed.), *1409 *et seq.*

If the foregoing reasoning is sound, the word "devise" was not used in the will in its technical or legal sense, but as synonymous with "give" and "bequeath." As illustrating my idea, if the demise of the life tenant had immediately succeeded that of the testator, the reversioners would

have at once succeeded, as tenants in common, to the possession of the estate, charged with a trust, first, for the payment of the debts of the testator; second, for the payment of the two legacies of $500 each to his sons; and third, for the division of the residue equally between all of his sons and daughters, deducting the advancement to Helen. · It is possible that some adjustment might have been made with the latter, and that some means might have been discovered by which the debts and specific legacies could have been discharged, and, if such an event could be supposed to have been contemplated by the testator, the sons and daughters might be regarded as remaindermen rather than reversioners; but, in my opinion, such an event cannot reasonably be supposed to have been anticipated nor therefore intended by him. But, if the estate expectant upon the termination of the life tenancy should be regarded as a technical remainder instead of one of inheritance—as, correctly and precisely speaking, ⹁ it perhaps ought to be—the limitation over would be subject to the same trusts and charges above mentioned, and the consequences would be the same as under the former supposition. In either view, a title in fee vested upon the death of the ancestor in the persons who then became his sole heirs at law, and the distinction just adverted to is without practical importance. In any event, that to which the testator intended that his sons and daughters should succeed in common was a residue of his estate to be left after the payment of his debts and the specific legacies. The deed from the testator to his wife was made for the sole purpose, expressed upon its face, of insuring the due observance of the will, and was therefore testamentary in character, and is also of no practical significance. The deed of August 29 by the heirs to their mother was, as is stated in the former opinion, evidently made for the sole purpose of enabling her to obtain a new loan for the satisfaction of the $3,500 mortgage executed by the testator. Nothing seems to have been said or done at the time of its execution indicating an intent by any

of the grantors to release his interest as devisee or legatee in the estate, and there is no reason to suppose that, if nothing more had been done, the present defendant, John H. Anthes, would have considered himself deprived by the transaction of his specific legacy of $500, which had precedence of all the other beneficences of the will except the life estate, and except a like legacy to his brother. It cannot be doubted, I think, that the mother by this means obtained, and for the ensuing seven years retained, the legal title, subject to the trusts created by the will. The deeds from the husbands of the respective daughters were merely intended to fortify the legal title, and evidently were not supposed to affect the fiduciary character of the grantee.

When in 1895, after the sale to Peterson, it was desired, both by the purchaser and by the widow and heirs, to obtain new loans, and objections to the title were made by the loan agent, it is clear that the new deeds then made were executed, not upon any new consideration, or for the purpose of conveying any title or interest which the grantors did not suppose they had parted with when they executed the former instruments. In other words, the deeds of October, 1895, were not intended to be deeds of conveyance, but of confirmation, and the trust character of the legal title in the mother was not thereby affected. That John H. Anthes so understood the situation is evident, both from the circumstances attending the transaction, and from his subsequent conversations in which he consulted with his brother and sisters relative to the sale of the residue of the land to the Challbergs, and in which he talked about their respective "shares" and the desire of his mother that something should be abated from each to make up a purse for her support during the remainder of her life. The relations betwen the parties were in the highest degree confidential, calling for the exercise of the uttermost good faith, and none of them was ignorant of any material fact or circumstance. That John H. knew that the mother had no beneficial interest in the land ex-

cept her life estate, and that she held the legal title upon
the trusts mentioned, is beyond doubt. Nor can it be
doubted that, if his mother had died in the trust, he would
have been among the first to demand an enforcement of his
lien for the satisfaction of his "share." The deed from the
mother to him, although expressly for $9,600, was without
any real consideration, and was evidently made solely for
the purposes of effecting a confirmation of the title of
Peterson, and of facilitating the sale to the Challbergs. The
fact that his brother and sisters acquiesced in these trans-
actions is, under the circumstances, no evidence that they
intended to waive or release their pecuniary interests in
the estate, which by the recent rise in prices had become
valuable. John H. having acquired the nominal title to a
trust estate with knowledge of the trust, and, moreover,
while occupying a confidential relation toward it and the
*cestuis que trustent,* is presumed to have intended to take
subject to it; and this presumption cannot be rebutted
without evidence or by such as is, to say the most of it,
vague and ambiguous. Much of it that came from his
own mouth is distinctly confirmatory of the trust, which
he seems never to have shown a disposition to repudiate by
word or deed until he was called upon for an account of
his stewardship, shortly before the beginning of this ac-
tion.

The parties are all agreed that the title of the Chall-
bergs, as well as that of Peterson, shall remain undis-
turbed by the final decree, and that the title of both shall
be affirmed upon payment by the former of the price stip-
ulated in the contract of purchase, and that a final ac-
counting between the parties and a distribution of the
fund shall be adjudged. This agreement should, of course,
be respected. If either of the life tenants has during in-
cumbency satisfied, out of means not derived from the
body of the estate, debts of the testator charged as liens
thereon, he or she will be entitled, upon the accounting, to
reimbursement, in accordance with the rule announced by
this court in *Tindall v. Peterson,* 71 Neb. 166.

It is recommended that the former decision of this court be vacated and set aside, and that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with this opinion.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former decision of this court be vacated and set aside, and that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.

The following opinion on motion for rehearing was filed March 8, 1905. *Motion denied:*

PER CURIAM: The very earnest and quite able brief of the appellees on their motion for rehearing discusses the proposition as though the will were a devise of lands to the parties named. The opinion of the commissioner upon the second hearing construes the will to direct a sale of the land and a distribution of the proceeds. If this is the proper construction of the will the statute of frauds has no application. It is considered that all parties acquiesced in the long delay because of the unfavorable conditions for selling real estate which obtained for a large portion of the time at least, and that the final sale to Peterson and the Challbergs was a consummation of the provisions of the will acquiesced in by all parties. It is insisted in the brief upon the motion that the labor and good management of Henry Anthes had much to do with creating the values realized upon the sale of the land, and that the disposition of the case will deprive him of fair compensation for his services; and also that the widow will be deprived of her life interest, but there seems to be no ground for this apprehension, as in stating account the trial court

can hear the evidence and do complete justice to all the parties.

It is also insisted that the condition of the pleadings is such that this disposition of the case is not justifiable. The pleadings are not entirely satisfactory. Upon another hearing they can be amended, if found necessary. We think the facts pleaded show that the plaintiffs are entitled to the relief indicated in the opinion.

The motion for rehearing is

OVERRULED.