ELENA LUISA JUNGHANNS RIVERA ET AL., Plaintiffs and Appellees, *v.* CORNELL UNIVERSITY, Defendant and Appellant; DR. L. H. JUNGHANNS, DR. F. W. F. WEIBER, DR. ADOLPH WEIBER, ATTORNEY ALFREDO JIMÉNEZ MORENO, FRANTEIN ISABELLA JUNGHANNS, and JOHN DOE and RICHARD ROE, Defendants.

No. 9862. Argued March 1, 1949.—Decided June 23, 1950.

James R. Beverley and R. Castro Fernández for appellant.
Félix Ochoteco, Jr., and Luis E. Dubón for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Robert L. Junghanns was born in the State of New York on July 1, 1875. He studied at Cornell University where he obtained a degree of Bachellor of Science in 1897 and in 1898 a Master's degree in the Science of Agriculture. Subsequently he moved to Puerto Rico and resided in the town of Bayamón where he lived until September 21, 1947 on which date he died, unmarried, without leaving ascendants.

On June 19, 1902 Junghanns executed in English the following holographic will: [1]

"The last will and Testament of Robb. L. Junghanns formerly of Poughkeepsie, N. Y. now of Bayamón, P. R.

"As all my personal as well as real property originally came from sums given to me by my dear father Dr. L. H. Junghanns formerly of Poughkeepsie, (sic) N. Y., now staying with me at Bayamón, it is my wish that all my personal as well as real property should become his absolute property, as universal heir, to be disposed of by him, as may seem most fit to him.

"In case that he should die without making other disposition of my property, I desire that all personal as well as real property belonging to me or the proceeds thereof, shall go to Cornell University of Ithaca, N. Y., U.S.A. for the purpose of strengthening their library of Anthropological & Entomological Works; or the income to be devoted toward collecting or research work in Anthropology or Entomology (alternately) at the option of the Trustees of C. U.

"Bayamón, P. R. (signed) Robb. L. Junghanns. June 19, 1902."

---

[1] Although § 633 of the Civil Code, 1930 ed., provides: "For the executing of a will in any other language besides Spanish or English, the presence of two interpreters shall be necessary, who shall be selected by the testator, and shall translate his provision into Spanish or English. The will shall be written in both languages, that is, the language of the testator and either English or Spanish. The same shall be understood when the will written in English is to be effective in whole or in part in Porto Rico and in cases when a will written in Spanish is to be effective in whole or in part in the United States," it is not applicable to the execution of closed or holographic wills. 5 Manresa, *Comentarios al Código Civil Español*, 5th ed., p. 453 *et seq.*

On August 20, 1907, he executed, also in English, the following closed will:

"I, the undersigned, Robert Ludwig Junghanns, a citizen of the United States of America, and at present domiciled at the City of Bayamón, in the Island of Puerto Rico, son of Ludwig Robert Junghanns and Ohamy Ha Hari, both now deceased, do hereby make, declare and publish the following to be my last WILL & TESTAMENT:

1. I give, devise and bequeath all my estate, real, personal or mixed in law or equity, wheresoever it may be situated that I die, seized or possessed of or which is owing, coming or belonging to me, to The Cornell University of Ithaca, N. Y.: *To have and to hold,* unto it and its assigns, forever, the interest or capital to be used in either or all of the following ways as the trustees of 'The Cornell University' may see fit:

(*a*) To go towards the establishment of a Chain of Tropical Agriculture.

(*b*) For the purchase of Entomological Specimens books, pamphlets, etc.; the fitting out of Entomological Expeditions & the conservation & maintenance of the Entomoligical Collections.

(*c*) Purchase of Agricultural books especially those bearing on tropical Agriculture and the History of Agriculture.

(*d*) The above bequeath (*sic*) is however subject to the following conditions:

(*a*) The sum of $1,600 is to be paid to Dr. F. W. F. Weiber, U.S.A., money that is due him.

(*b*) The sum of $750.00 is to be paid to Dr. Adolf Weiber of Brooklyn, N. Y. to defray expenses as executor.

(*c*) The sum of $500 is to be paid to Alfredo Giménez y Moreno of Bayamón, Porto Rico to defray expenses as executor.

(*d*) The sum of $250.00 is to be paid annually during life to Frantein Isabella Junghanns of Freiburg, in/3, Baden, Germany.

(signed) Robt. L. Junghanns.

2. I appoint Dr. Adolph Weiber of Brooklyn, N. Y. and Sr. Dn. Lcdo. Alfredo Giménez y Moreno of Bayamón, Porto Rico executors of this may last will & testament.

*In Witness whereof,* I have hereunto signed my name at the city of Bayamón, P. R. this 20th day of August 1907.

(signed) Robt. L. Junghanns."

At his death Junghanns left as his sole descendants four recognized natural children as the result of relations had with Juana Rivera, who died before him, all born in Bayamón on the following dates: Elena Luisa, on June 23, 1918; Roberto Luis, on September 30, 1922; Alice Mary, on March 3, 1926, and Norma Iris, on March 22, 1931.

Junghanns also left at his death personal and real property located in Bayamón among which were several archeological collections, books, and paintings.

On October 23, 1947 the District Court of Bayamón ordered the protocolization of the foregoing holographic and closed wills which was done on October 30, 1947 by deed No. 29 of that year before Notary Félix Ochoteco, Jr.

The natural children of Junghanns, mentioned above, filed this suit against Cornell University and against all the persons who were benefited by virtue of the testamentary provisions of their father, requesting that both wills be declared void on the ground of preterition. They also asked to be declared the sole and universal heirs of their father; that the debt of $1,600 which Junghanns acknowledged in his closed will in favor of Dr. F. W. F. Weiber be declared extinguished by payment and that the annual pension of $250 provided in the same will in favor of Frantein Isabella Junghanns be also declared extinguished.

All the defendants were duly summoned but only Cornell University appeared. Default was entered against the others. The case was submitted to the lower court on a stipulation of facts. Judgment was rendered declaring the wills void because of preterition of forced heirs, and designating as the sole and universal heirs of Robert L. Junghanns his recognized natural children. It also declared extinguished by payment the debt of $1,600 acknowledged by the deceased in favor of Dr. Weiber in his closed will. Cornell University, defendant herein, appealed and assigned as errors (1) that the lower court declared totally null the closed will executed on August 20, 1907 and (2) that it

failed to declare that by the closed will Junghanns created a trust transferring to Cornell University all his personal property for the benefit of said University and of the other persons mentioned in the will.

■ In discussing its first assignment of error appellant maintains that the intention of the testator was to leave to it all his property as a legacy. Based on this theory it argues that the will is not void in its entirety as the legacy made in its favor is valid in that portion of the inheritance not inofficious, pursuant to § 742 of the Civil Code, 1930 ed.,[2] inasmuch as the omission of forced heirs—recognized natural children in this case—would annul only the institution of heir in its favor, if that were the case, but that as it was designated as legatee and not as heir, the legacy is effective, in so far as it is not inofficious, that is, as to one-half of the inheritance.[3] We turn to examine the grounds advanced to support the above theory.

The first argument is that when Junghanns designated his father as heir under the holographic will executed on June 19, 1902, he stated: ". . . it is my wish that all my personal as well as real property should become his absolute property, *as universal heir*, to be disposed of by him as may seem most fit to him" (italics ours), thereby expressly signifying his will to institute him *heir*, while in the closed will executed on August 20, 1907 he not only avoided the use of that word—knowing its meaning and being able to use it

---

[2] Said Section provides: "The omission of any or of all the lawful heirs in the right line whether they be living at the time of the execution of the will or whether they are born after the death of the testator shall annul the institution of an heir, but trusts and advantages or extra portions shall be valid whenever they are not inofficious.

"The omission of the surviving husband or wife does not annul the nomination of the heir, but the omitted party shall preserve the rights which this Code gives to him. If the omitted lawful heir shall die before the testator, the nomination of an heir shall have effect."

[3] Section 769 of the Civil Code, 1930 ed., amended by Act No. 13 of March 29, 1945, in force at the time of the testator's death provided:

"When the testator leaves no legitimate descendants or ascendants, the acknowledged natural children shall be entitled to one-half of the inheritance."

if that were his intention—but instead used, in disposing of his property for the benefit of appellant, the words "devise" and "bequeath" that at American common law and statute law are used to denote, the first, a *legacy* of real estate and the second, a *legacy* of personal property.

The use of the words *universal heir* in the will of 1902, and their omission in that of 1907, does not have the effect attributed to it by appellant, nor, as we shall see later, should its use be considered to determine the concept under which should be held at law the disposition made by the testator of his property in the latter, for it is the will of 1907 that we must examine in order to make such determination. But if in order to do so we were to consider the former will, then the conclusion would be adverse to appellant. Although in the will of 1902 the testator employed the words "as universal heir" in disposing of his property in favor of his father, he did not use them in the last paragraph where he provided:

"In case that he should die without making other disposition of my property, I desire that all personal as well as real property belonging to me or the proceeds thereof, shall go to Cornell University of Ithaca, N. Y., U.S.A. for the purpose of strengthening their library of Anthropological & Entomological Works; or the income to be devoted toward collecting or research work in Anthropology or Entomology (alternately) at the option of the Trustees of C. U."

This provision clearly establishes a simple substitution of *heir* in favor of Cornell University. Section 703, Civil Code, 1930 ed. If we were, therefore, to judge the intention of Junghanns in the will of 1907 by the one expressed in the will of 1902, we would reach the inescapable conclusion that in the will of 1907 he left all his property to appellant as universal heir, thereby ratifying his previous wish manifested in the will of 1902.

Let us now consider another ground adduced by appellant. Do the words "devise" and "bequeath" used in

the will of 1907 have the effect attributed to them by appellant of designating it as legatee of all the property of Junghanns? Let us see.

In the will of 1907 set forth above, Junghanns, after stating that his father Ludwig Robert Junghanns and his mother Ohamy Ha Hari had died, proceeded to dispose of his *entire* estate in the following manner:

"1. I give, devise and bequeath all my estate, real, personal or mixed in law or equity, wheresoever it may be situated that I die, seized or possessed of or which is owing, coming or belonging to me, to The Cornell University of Ithaca, N. Y.: *To have and to hold,* unto it and its assigns forever, the interest or capital to be used in either or all of the following ways as the trustees of 'The Cornell University' may see fit:"

Immediately after, under letters (*a*), (*b*), and (*c*) of that same clause, he indicated the use to which Cornell University should devote the property left by him to the University. See § 726 of the Civil Code, 1930 ed. And he immediately stated: "The above bequeath (*sic*) is however subject to the following conditions," enumerating under his so-called conditions the following: the payment of $1,600 to Dr. F. W. F. Weiber, money due him; the payment of $750 and $500 respectively to Dr. Adolph Weiber of Brooklyn and Alfredo Jiménez Moreno of Bayamón to defray expenses as executors; and the payment of $250 during life to Frantein Isabella Junghanns.

It is significant that Junghanns, upon making the provision in favor of appellant, disposed of *all* his property, personal as well as real, including that which he labeled *mixed in law or equity,* so that the entire property would pass to appellant. It is because the testator employed the words "devise" and "bequeath" in the manner stated above that appellant maintains that the testator disposed of the property in its favor under title of legacy and not under title of heir.

Section 624 of the Civil Code, 1930 ed., provides that "Every testamentary provision shall be understood in the literal meaning of its words, unless it clearly appears that the will of the testator was different" and that "In case of doubt, that which appears most in accordance with the intention of the testator, according to the tenor of the same will, shall be observed." Section 617, in turn, provides that "The testator may dispose of his property either under title of inheritance or under that of legacy" and that "In case of doubt, even if the testator has not actually used the word 'heir,' if his will is clear on this point, his disposition shall be valid as made under a title, either universal, or of inheritance." (Italics ours.)

The scope of the will of 1907 cannot be limited by the meaning that the words "devise" and "bequeath" may have at American common law and statute law. Under our law, the concept that may be applied to heirs and legatees is determined by whether they take under a *universal* title or under a *specific* title—§ 609, Civil Code, 1930 ed.—and a legacy of personal or real property may be instituted provided that a *specific* disposition is present in the will. 5 Manresa, *Comentarios al Código Civil*, (5th ed.) 311, 312. On the other hand, if a certain and specific thing is left to an *heir* he shall be considered to be a *legatee*—§ 697 of the Civil Code—no matter how he was designated, while a person to whom a *legacy* is left will be considered to be an heir and not a *legatee*, if a *universality* appears from the disposition, *Blanch* v. *Registrar*, 59 P.R.R. 726, for the intention of the testator should control over the literal meaning of the words that he used in the will. *Hernández, Trustee* v. *Registrar*, 55 P.R.R. 113; *Colmenero* v. *Fernández*, 63 P.R.R. 882. See also *Serrano* v. *Roca*, 43 P.R.R. 643.

We cannot confine ourselves therefore to the ordinary meaning given to the words "devise" and "bequeath" under

American law [4] when according to our law the essence of their meaning depends on the nature of the testamentary disposition, whether under *universal* title or under a *specific* title. On this point, Manresa says; *op.* and vol. cited, p. 316:

"In effect the word universal title does not mean that the title embraces or includes the total or the entire or all the property pertaining to the estate or even the remainder thereof, that is, the inheritance in the strict sense attached to it by the laws of the Partidas, but that *the right conveyed be limited or have relation to that universality which constitutes the hereditary estate, and not to anything particular and definite, that is, to certain property considered in particular and apart from the universality or hereditary estate."* (Italics ours.)

Notwithstanding the use of the words "devise" and "bequeath", it is clear from the will of 1907 that the intention of the testator was to convey to appellant the universality of his hereditary estate and not a specific and definite thing considered in particular and apart from said universality, subject to certain *conditions.* The fact that Junghanns, in

---

[4] Even in the United States the words "bequeath" and "devise" have been given, when construing testamentary dispositions, different meanings from those that they convey in their legal sense, when the intention of the testator is clear from the context of the will. Thus, the word "bequeath" has been considered synonymous to "devise" when used with reference to real property. Thompson on Wills, 2d ed., p. 569, § 480; *Burwell* v. *Cawood et al.,* 43 U. S. 559, 11 L. ed. 378; *In re Hoover's Estate,* 7 N.Y.S. 283. See also *Rickman* v. *Meier,* 213 Ill. 507, 72 N. E. 1121; *Shumate* v. *Bailey et al.,* 110 Mo., 411, 20 S. W. 178 and *Schwingel* v. *Anthes,* 72 Neb. 643, 101 N. W. 335. This is so because under American common law and statutory law, the same as in civil law, "The cardinal rule in the interpretation of wills is, that the language is to be interpreted in subordination to the intention of the testator, and is not to control that intention, when it is clear and "determinate." *Burwell* v. *Cawood, supra.* See 57 Am. Jur. Wills, § 1400, p. 934. It should be noted that in the will of 1907 although Junghanns used the words "devise" and "bequeath" after "give," he transferred to Cornell University "all my *estate,* real, personal or mixed in law or equity." (Italics ours.) This language has been consistently construed by the American courts as a disposition of the whole of the property, of whatever kind, the word "estate" having a broader scope than "property." *Archer* v. *Deneale,* 1 U. S. 585, 7 L. ed. 272; *Hatch* v. *Farguson* (C.A. 9, 1895) 68 Fed. 43, 57 Am. Jur. Wills, § 1337, p. 886.

640

stating those conditions, began with the phrase "The above bequeath (*sic*) . . ." does not mean that the disposition which he made of all his property in favor of Cornell University, partakes of the character of a *legacy*, for this phrase does not determine the sense in which it should be contemplated, since it was not used with the intention of describing the nature of the testamentary provision under which he conveyed all of his property—personal and real—and much less to restrict it exclusively to personal property, but rather it was used merely as an introductory phrase to the subsidiary disposition which were to burden *all* the property conveyed.

■ The other ground set forth by appellant in support of its contention that it was designated as *legatee* and not as *heir*, is based on the fact that, by logical reasoning,[5] it could not have been the intention of Junghanns that his personality should continue in a *legal entity* such as Cornell University. It suffices to say in this connection that in our law—§§ 675 and 676 of the Civil Code—a juridical entity having legal existence has capacity to take by will or ab intestato, and that since the law does not limit this capacity it is qualified, when taking under a will, to do so by universal title or specific title, as may result from the disposition made in its favor.

---

[5] Appellant sets forth its reasoning on pp. 10 and 11 of its brief in the following manner: "It is repugnant to logic that a natural person should have the intention of leaving a *juridical person* as the continuer of his personality. It is logical that a natural person should wish that his personality continue after his death in another natural person, for which reason if a person leaves everything he owns to another natural person, it is presumed that he designates the latter as his sole heir. However, if this natural person leaves all his property to a *juridical person* the presumption should be to the contrary and if that person, like the testator herein, knows the literal value of the words in his language; knows how to use them to express his wish and will; expressly omits the phrase which is used to dispose under title of inheritance and uses other words which disclose his intention to bequeath, any trace of doubt will necessarily disappear and his last wish will be eloquently expressed."

█ Finally, appellant maintains that if Junghanns did not designate it as legatee to *all* his property he at least did so as to his *personal* property; and that this being so, the legacy is valid in whatever portion it is not inofficious. Appellant rests on the introductory phrase "The above bequeath (*sic*) . . .," already discussed, which was used in the will in stating the *conditions* established by Junghanns. In view of what we have said before, we deem it unnecessary to discuss at length this argument. The disposition made by the testator included *the whole* of his estate, under universal title, without separating his *personal* property to dispose of it otherwise. On the contrary, he specifically included it as part of his estate which he was transferring to appellant. This phrase does not have the effect of having the *personal* property pass as a *legacy* of an aliquot part of the inheritance.

Appellant lays stress on the decision of the Supreme Court of Spain of February 11, 1903, 95 *Jurisprudencia Civil* 278, holding that the *legacy of one-third of the inheritance* is a legacy of an aliquot part which is not prohibited by the Civil Code, *nor constitutes universal title* to the estate.[6] But we have seen that in the instant case Jung-

---

[6] The following is Manresa's commentary, vol. 5, *op. cit.*, p. 315, on this decision:

"The decision of the Supreme Court of February 11, 1903 declares that the *legacy* of one-third of the inheritance is a legacy of an aliquot part of the inheritance, that is, one that is neither prohibited by the Civil Code nor constitutes universal title to the estate.

"By this decision our law has admitted the existence of a legacy of an aliquot portion although it is not regulated by the Code and that, construing *a contrario sensu* § 768 [§ 697 of our Code] it could be inferred that the legatee of an aliquot part should be considered not as a legatee but as an heir."

See the decision of January 2, 1920, 149 *Jurisprudencia Civil* 11, and the meaning of "indeterminate, proportionate, and even arithmetical" applied by said commentator to the concept of *aliquot*, p. 316, *op.* and vol. cited, characteristics which do not appear in the will of Junghanns with reference to any portion of his estate.

See also 5 Valverde, *Tratado de Derecho Civil*, footnote on pp. 168 and 169, last paragraph.

hanns did not leave appellant an aliquot part or any part of his property but the *whole*, subject to the charges or conditions stated.

The conclusion that we have reached with respect to the first assignment of error disposes of the second wherein appellant alleges that Junghanns created a trust in his will by transferring to Cornell University all his *personal* property for the benefit of said University and of other persons mentioned in the will.

██ Having decided that Junghanns instituted appellant universal heir and not legatee, such institution, pursuant to § 742 of our Civil Code,[7] is void because of the omission of the forced heirs—his recognized natural children—who, the intestate succession being opened on that ground, and there being no legitimate or legitimized descendants or ascendants of their father, succeed him in the whole of the estate—§ 902 of the Civil Code—the latter being, of course, subject to the charges or legacies that may subsist at the time of his death.[8]

The judgment will be affirmed.

---

[7] *Iturrino* v. *Iturrino*, 24 P.R.R. 439; *Ex parte Boerman*, 34 P.R.R. 120; *Heirs of Garrastazú* v. *Registrar*, 36 P.R.R. 157; *Semidey* v. *Viqueira*, 53 P.R.R. 445; 6 Manresa, *op. cit.*, vol. 5 pp: 347, 348, and 352.

[8] Paragraph 8 of the stipulation of facts on which this case was submitted to the lower court is to the effect that: "At the time that Mr. Robert L. Junghanns died he did not owe anything to Dr. F. W. F. Weiber; and Dr. Adolph Weiber, Alfredo Jiménez Moreno, Esq. and Mrs. Frantein Isabella Junghanns had died."